## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Class Action Civil Action No. _____

DAVE YOUNGBLOOD and
DON STEINBACH,
Individually and on behalf of all others similarly-situated,

      Plaintiffs,

vs.

MATRIX TRUST COMPANY,

      Defendant.

---

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

---

Plaintiffs, Dave Youngblood and Don Steinbach (collectively, "Plaintiffs"), individually and as class representatives on behalf of all similarly situated persons, bring this action against Defendant, Matrix Trust Company, and allege as follows:

### CASE SUMMARY

1.    Plaintiffs bring this proposed class action on behalf of themselves and other § 403(b) retirement plan accountholders (the "§403(b) Plan Accountholders") whose § 403(b) investments were managed by Matrix Trust Company ("Matrix" or "Defendant"). From approximately May to October 2017, Matrix made several substantial transfers of § 403(b) plan assets directly to Vantage Benefits Administrators ("Vantage"), per Vantage's directions for same, without direction or authorization from the § 403(b) plan administrators or accountholders. Pursuant to Vantage's instructions communicated through a third party-administrator online portal

(the "TPA Portal"), Matrix fraudulently transferred at least three million dollars ($3,000,000.00) from the § 403(b) plan accounts in its custody, resulting in the substantial diminution of the § 403(b) plan accounts (collectively, the "403(b) Class").

2.     Matrix was engaged by Vantage to manage and invest the assets of retirement funds that it administered.  In the course of its management, Matrix executed at least three million dollars ($3,000,000.00) of unsanctioned transfers from at least five (5), § 403(b) tax-deferred retirement plans (the "§ 403(b) Plans") into a private, Bank of America business account maintained by Vantage or its agents (the "Vantage Account").  Vantage sent Matrix in e-mail-like messages through the TPA Portal Matrix offered plan participants in connection with its services and directed that the fraudulent transfers be made from the Plaintiffs' and Class Members' § 403(b) Plans into the Vantage Account. The destination account for these transfers was not an authorized destination for plan assets.  Matrix did not verify that the transfer orders were authorized under the terms of the individual § 403(b) Plans or by the § 403(b) Plan Accountholders.   Without accountholder authorization, Matrix unilaterally completed each of the fraudulent transfers of § 403(b) Plan Assets into the Vantage Account solely at the instruction and direction of Vantage and in violation of the terms of the § 403(b) Plans. In doing so, Matrix executed these transfers in breach of its fiduciary duty to the accountholders.

3.     Section 403(b) retirement plans are tax-exempt retirement investment options available only to employees of public schools and certain § 501(c)(3) non-profit organizations. The assets of the § 403(b) Plans managed by Matrix (the "Participant Funds") were all structured in custodial accounts and could be invested only in certain authorized mutual funds as specified in each Plan's organizing documents.   The Vantage Account into which Matrix improperly

transferred at least three million dollars ($3,000,000.00) of Participant Funds was not an authorized investment account.

4.      In October 2017, Vantage's office was raided by the Federal Bureau of Investigation (the "FBI") following allegations of missing retirement funds.  Matrix and Vantage are currently engaged in litigation related to missing retirement assets, from non-403(b) plans, administered by Vantage and managed by Matrix, from which Matrix illicitly transferred a total of approximately eleven million dollars ($11,000,000.00) into the Vantage Account in breach of its fiduciary duty to those plans and accountholders. A description of pending related litigation is included herein.  None of the claims in the pending cases overlap with the claims of the members of this class.

5.      On behalf of themselves and the proposed § 403(b) Class, Plaintiffs seek to compel Matrix to return the improperly transferred monies and reimburse class members for the lost earnings suffered due to these transfers, among other recoverable damages.

## PARTIES

6.      Plaintiff, Dave Youngblood, is a citizen and resident of the State of Texas.  Mr. Youngblood is a § 403(b) Plan Accountholder with the Texas A&M University System Tax Deferred Account Plan (the "Texas A&M Plan"), which is a § 403(b) Plan that was managed by Matrix and suffered losses due to the transfers described in this complaint.  Mr. Youngblood suffered losses typical of the Class.

7.      Plaintiff, Don Steinbach, is a citizen and resident of the State of Texas. Mr. Steinbach is a § 403(b) Plan Accountholder with the Texas A&M Plan and suffered losses typical of the Class.

8.      Defendant, Matrix Trust Company, is a wholly-owned subsidiary of Matrix Financial Solutions, Inc. ("Matrix Financial"), which is a corporation existing under the laws of Delaware, with its principal place of business located at 717 17th Street, Suite 1300, Denver, Colorado 80202. Matrix Financial operates as a subsidiary of Broadridge Financial Solutions, Inc. ("Broadridge"), which is a corporation existing under the laws of Delaware, with its principal place of business located at 5 Dakota Drive, Suite 300, Lake Success, New York 11042.  Matrix is a fiduciary to the § 403(b) Class Members because it, in fact, exercised authority and control over the management or disposition of the Texas A&M Plans' assets by, among other acts, unilaterally completing each fraudulent transfer of assets of the Texas A&M Plans to the Vantage without authorization or direction from the Plaintiffs.

## JURISDICTION, AND VENUE

9.      This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the class exceeds $5,000,000, and Plaintiffs and other § 403(b) Class Members are citizens of a different state than Defendant, and as such, there is complete diversity of citizenship.

10.      This Court has personal jurisdiction over Plaintiffs because they submit to the Court's jurisdiction.

11.      This Court has personal jurisdiction over Matrix because Matrix's principal place of business is in this District and most or all of Matrix's actions giving rise to the complaint took place in this District.

12.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTS

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT – Page 4**

_**26 U.S.C. § 403(b) Participant Funds:**_

13.     Plaintiffs and all § 403(b) Class Members are participants in certain tax-sheltered annuity plans, known as "§ 403(b) Plans," which are only available to public school employees and employees of certain § 501(c)(3) tax-exempt organizations.  Contributions to a § 403(b) Plan, and earnings and gains on those contributions, are not taxed until withdrawn from the account, which normally begins at age 59 ½.  While individual accounts in a § 403(b) Plan can be structured in several different ways, the individual accounts at issue in this matter ("Class Member Accounts") are all custodial accounts intended to be invested in mutual funds.

14.     Section 403(b) Plan participants can contribute up to a certain percentage of their pre-tax income to their § 403(b) account each year.  Contributions are excluded from participants' gross income.  Some employers may also choose to match some or all of the participants' contributions.

15.     Section 403(b) Plans are not covered under the Employee Retirement Income Security Act ("ERISA").

16.     At least five § 403(b) Plans were affected by the transfers described in this complaint, including Plans associated with Texas A&M University, Vernon College, Collin College, Laredo Community College, and Tarrant County College.

_**Matrix Trust Company**_

17.     Matrix provides custodial and trust services for retirement plans, including § 403(b) Plans. On its website, Matrix is described as a platform to "[a]utomate and consolidate trust and custodial services with a single, secure platform backed by a state-of-the-art trust accounting system." Matrix provides "[r]eal-time access to cash, disbursements, holdings and transactions," and allows clients to "Manage trust and custody services for retirement plans on a single platform.

Easily access information on cash, disbursements, holdings, transactions, plan statements, participant 1099s and more." Matrix is "[a]n all-in-one solution for trust and custody services[,]" which will "optimize all aspects of trust and custody services for retirement plans and facilitate management with real-time information on cash disbursements, holdings and transactions."[1]

18.     Matrix accepted and held possession of Plaintiffs' and Class Members' § 403(b) Plan Assets under its authority and control.  Upon information and belief, there is no written agreement between Plaintiffs and the Class Members (individually or in the aggregate), on one hand, and Matrix, on the other hand, with respect to Matrix's taking possession of Plaintiffs' and Class Members' assets, nor is there a written agreement between Matrix and Vantage. Matrix unilaterally completed the fraudulent transfers of Plaintiffs' and Class Members' § 403(b) Plan Assets to the Vantage Account without Plaintiffs' authorization, based solely on the instruction or direction of Vantage communicated through the TPA Portal and contrary to the terms of the § 403(b) Plans.

19.     At all relevant times, Matrix was a fiduciary with respect to Plaintiffs and the Class Members because it acted as trustee of Plaintiffs' and the Class Members' §403(b) Plan Assets. Under Colorado law, a trust exists between two entities where "one of them holds property for the benefit of the other."  *Hudson v. Wilhelm*, 651 F. Supp. 1062, 1065-66 (D. Colo. 1987).  A trustee is a fiduciary under Colorado law. *See* C.R.S. § 15-1-301.  Matrix accepted possession of millions of dollars of Plaintiffs' and Class Members' §403(b) Plan Assets to manage said assets for the benefit of Plaintiffs and Class Members, thereby establishing a fiduciary duty.

---

[1]     https://www.broadridge.com/financial-services/asset-management/retirement-services/optimize-trade-processing/trust-and-custody-services?oldurl=http://matrix.broadridge.com

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT – Page 6**

20.     At all relevant times, Matrix was a functional fiduciary with respect to Mr. Youngblood, Mr. Steinbach, and the Class Members because it, in fact, exercised authority and control over their § 403(b) Plan Assets. Matrix accepted possession of millions of dollars of § 403(b) Plan Assets. In doing so, Defendant exercised authority and control over the § 403(b) Plan Assets by unilaterally disbursing said assets to the Vantage Account without any authorization or direction from Plaintiffs or Class Members. To say that Matrix did not have control over the § 403(b) Plan Assets while Matrix held them is to say that no one had control during this time.

21.     When a fiduciary is "investing and managing assets," the fiduciary's actions are subject to the standard for trustees as indicated in the Colorado Uniform Fiduciaries Law and laid out in the Colorado Uniform Prudent Investor Act, which establishes a "prudent investor" standard. C.R.S. § 15-1-304.1(1); *see* C.R.S. § 15-1.1-102.   The general prudent investor standard is restricted, however, in that the fiduciary must adhere to "the express terms and conditions set forth in … [the] instrument creating or defining the fiduciary's powers." C.R.S. § 15-1-305.  Matrix did not have authority to distribute Plaintiffs' and Class Members' § 403(b) Plan Assets in violation of the terms of the § 403(b) Plans.  Matrix breached its fiduciary duty when it unilaterally disbursed Plaintiff and Class Member § 403 Plan Assets into the Vantage Account per Vantage's directives communicated through the TPA Portal, without any authorization or direction from Plaintiffs or Class Members and in violation of the terms of the § 403(b) Plans.

22.     The Matrix accounts, which held the § 403(b) Plans' Assets, were established in the Plans' names. The § 403(b) Plans were named as the depositor of the funds on the Matrix account titles.  Vantage and its agents, however, sent instructions and directives to Matrix through electronic messaging in the TPA Portal to complete the transfers – without any notice to or consent by Plaintiffs. The fraudulent transfers were made to the Vantage Account, a business bank account

held not the § 403(b) Plan Accountholders or the § 403(b) Plans, but, by Vantage at Bank of America. Even though Matrix knew that that Vantage and its agents were not the § 403(b) Plan Accountholders or depositors of the § 403(b) Plan Assets it held, Matrix completed each prohibited transfer solely at the instruction of Vantage or its agents, without authority or direction from the § 403(b) Plan Accountholders. Matrix exercised unilateral control over the §403(b) Plan Assets of the Class Members by transferring Class Member funds to the Vantage Account, without any authorization or direction from the Plaintiff and in violation of its fiduciary obligations under Colorado law. C.R.S. §§ 15-1-301, 15-1-304.1, 15-1-305, and 15-1.1-102.

### *The Breach*

23.     Matrix was engaged to act as custodian and trustee of the § 403(b) Plan Assets at the behest of Vantage. Vantage provided recordkeeping services for the § 403(b) Plans at issue. As custodian and trustee, Matrix held, invested, and distributed § 403(b) Plan Assets. Vantage sent Matrix instructions via electronic message in the TPA Portal directing it to make certain investments and distributions. Per Vantage's instructions Matrix then executed these transfers and investments, even though such actions were in violation of the terms of the § 403(b) Plans.

24.     At some time prior to October 25, 2017, an actuary employed by Vantage, Charles Leggette, detected abnormalities with certain accounts for which Vantage provided recordkeeping services, including the § 403(b) Plans at issue in this case.

25.     Upon discovery of these abnormalities, Mr. Leggette filed a Form 211 with the Internal Revenue Service (the "IRS") under the IRS's whistleblower program. The IRS acknowledged receipt of Mr. Leggette's Form 211 by letter dated August 23, 2017. Around this time, another Vantage employee filed a similar claim with the United States Department of Labor (the "DOL").

26.   On October 25, 2017, the FBI executed a search warrant at Vantage's offices in Dallas, Texas.[2]

27.   Investigation into Vantage's bookkeeping revealed that, from approximately May to October 2017, Vantage systematically misrepresented, to the §403(b) Plans and Plan Participants, the balances of the accounts held by Matrix to conceal the fact Matrix, at the direction of Vantage or its agents, effectuated millions of dollars of fraudulent transfers from Plaintiffs' and Class Members' §403(b) Plan Assets to Vantage's own business bank account for its own gain.

28.   Utilizing the online TPA Portal provided by Matrix for its customers (*i.e.*, the Plan Participants), Vantage instructed Matrix in Colorado, via online e-mail-like messages, to complete fraudulent wire transfers purportedly to various entities from § 403(b) Plan Assets from the Class Member Accounts belonging to Plaintiffs and Class Members. The bank routing and account numbers that Vantage provided to Matrix in its instructions, however, all corresponded to the Vantage Account, a business account in Vantage's name held at Bank of America. There is no evidence that any entity or account other than the Vantage Account received any §403(b) Plan Assets through these wire transfers.  There is no indication how or why Matrix considered the Vantage Account to be a proper investment option or distribution destination for the § 403(b) Plan Assets when it was not an approved destination under the terms of the § 403(b) Plans.

29.   At the sole direction of Vantage communicated to Matrix via TPA Portal messages, and without any authority from Plaintiffs, Matrix completed each fraudulent transfer on a non-reportable basis for federal and state tax purposes, even though these types of retirement plan distributions are required to be reported to the IRS. This allowed Vantage to conceal and hide its

---

[2] Terri Langford, FBI raids Dallas financial office amid allegations of missing retirement funds, Dallas Morning News (October 31, 2017), https://www.dallasnews.com/news/downtown-dallas/2017/10/31/fbi-raids-dallas-office-401k manager-vantage-benefits.

ongoing thefts from Plaintiffs and the federal authorities for a significant period of time. Matrix, as a trustee and fiduciary, knew that valid participant distributions under the § 403(b) Plans must be reported to the IRS, such as by filing a Form 1099 for the transfer. However, contrary to the IRS reporting requirement, Vantage instructed Matrix to effectuate the wire transfers on a non-reportable basis. Matrix was never authorized or instructed in any manner by either Plaintiffs or the § 403(b) Plans to make these fraudulent transfers on a non-reportable basis. Rather, it acted unilaterally in doing so and upon the directions of Vantage.

30.     From approximately May through October 2017, at the sole direction of Vantage and without informing Plaintiffs, Matrix suppressed the § 403(b) Plans' trust statements on its account administration systems, and failed to provide the § 403(b) Plans' trust statements to Plaintiffs and the § 403(b) Plans, even though it had no authority from Plaintiffs or the § 403(b) Plans to follow such instruction from Vantage. Without receiving the §403(b) Plans' trust statements, Plaintiffs could not and did not become aware that funds had been fraudulently transferred from their § 403(b) Plan Accounts to the Vantage Account.

31.     Utilizing the TPA Portal provided by Matrix to its customers, Vantage sent electronic messages with instructions to Matrix in Colorado, directing it to complete wire transfers from the accounts of the § 403(b) Plans' participants purportedly to an entity called Hilltop Securities, Inc. ("Hilltop"). The bank routing and account numbers that Vantage provided for these instructions to Matrix, however, corresponded to the Vantage Account held at Bank of America. There is no evidence that Hilltop received any assets of the plans through these wire transfers.

32.     Matrix effectuated and completed the fraudulent wire transfers of the § 403(b) Plan Assets from the Class Member Accounts to the Vantage Account, per Vantage's instructions even though Matrix knew or should have known that the transfers were unauthorized and illegal because

the wire transfers were being made to a Bank of America account in the name of Vantage, and not to Hilltop, the purported transferee in the instructions received by Matrix from Vantage.

33.     Matrix was aware that the § 403(b) Plan Assets could only be directed by § 403(b) Plan Accountholders into certain destination accounts or funds.  Accordingly, although Matrix was aware that transferring the Plan Assets to a self-directed brokerage account, as may be offered by an entity like Hilltop, was not a permissible option under a § 403(b) plan, it completed these wire transfers anyway, without any inquiry into the validity of the transfers.

34.     Matrix knew that each of these transfers was made using the same bank routing number and same bank account number, which was connected to the Vantage Account, a business account held by Vantage or its agents at Bank of America.

35.     Upon information and belief, at least three million dollars ($3,000,000.00) was improperly removed from the five (5) known § 403(b) accounts by Matrix from approximately May through October 2017.  Each accountholder in the Texas A&M Plan, including Mr. Youngblood and Mr. Steinbach, lost one-and-a-half percent (1.5%) of their total respective § 403(b) Plan Assets.[3] Matrix may have completed, at the instruction of Vantage, other fraudulent transfers of assets from other § 403(b) Plans to the same Vantage Account.

36.     Matrix's general "403(b) Custodial Account Agreement (With Employer or Plan Sponsor)" specifically states, in section 5.4, that "the Custodian [Matrix] is authorized to invest Plan assets only in Mutual Fund Shares," yet it executed hundreds of transfers of § 403(b) assets to an account held by Vantage. A true and correct copy of the "403(b) Custodial Account Agreement with Employer or Plan Sponsor" is attached hereto as **Exhibit A**.  Matrix's role in making the fraudulent transfers of Plaintiffs' and Class Members' § 403(b) Plan Assets as part of

---

[3] Plaintiffs will submit a more detailed accounting of the individual losses upon entry of a protective order.

the Vantage's fraudulent scheme constitutes aiding and abetting a pattern of racketeering activity in violation of the Colorado Organized Crime Control Act ("COCCA") C.R.S. § 18-17-101, *et seq.*, and, together with its failure to take any action to protect the Class Member Accounts and §403(b) Plan Assets, Matrix breached its fiduciary duties to the § 403(b) Class Members. Matrix's aforementioned violations and breaches directly caused the losses suffered by Plaintiffs and the Class Members.

### ***Related Cases***

37.    Multiple lawsuits related to missing retirement funds have been filed against both Matrix and Vantage in the wake of the 2017 FBI raid. Vantage did not limit their fraudulent scheme to § 403(b) accounts.  None of the other cases filed to date, have asserted claims on behalf of or concerning a § 403(b) plan or § 403(b) plan participants.  The United States District Court for the Northern District of Texas ("Northern District of Texas") is the proper venue for these cases because Vantage has its principal place of business in that district.

38.    On March 8, 2018, a default judgment was entered against Vantage in the Northern District of Texas in *Caldwell and Partners Inc. v. Vantage Benefits Administrators*, N.D. Tex., No. 3:17-cv-03459-N, for ERISA violations. The judgment was entered for approximately $ 10.25 million in actual damages and attorneys' fees, and the remaining claims in the case were dismissed.

39.    Another case, *MBA Engineering, Inc., et al., v. Vantage Benefits Administrators, Jeffrey A. Richie, Wendy K. Richie, and Matrix Trust Company*, N.D. Tex, Case No. 3:17-cv-03300, is currently pending in the Northern District of Texas. The complaint, brought by the trustee and sponsor of two retirement plans that lost approximately $ 2.3 million in unauthorized transfers, asserts claims for breach of ERISA fiduciary duty, injunctive relief, co-fiduciary liability, writ of

attachment, common law fraud, professional negligence, negligent misrepresentation, Texas Theft Liability Act, and breach of contract. Matrix executed thirty-five (35) fraudulent wire transfers from two (2) MBA Engineering retirement plans. Twenty-five (25) of those transfers were made under fake names and social security numbers that Matrix knew or had reason to know were not participants in those Plans. Matrix executed thirty-four (34) of these illegitimate transfers in a single year from one (1) ERISA Plan with only forty (40) total active participants.

## CLASS ALLEGATIONS

40.    Pursuant to FRCP 23(a), (b)(2) and (b)(3), Plaintiffs brings this action on their own behalf and on behalf of a proposed class of all other similarly situated persons nationwide, consisting of all persons who were participants in a § 403(b) Tax Deferred Retirement Plan from which Matrix Trust Company made at least one (1) improper transfer to the personal accounts of Vantage Benefits Administrators, Inc., or its agents during the relevant time period.

41.    Excluded from the Class are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions, excepting entities whose employees are eligible to invest in a § 403(b) retirement plan; (b) any entity in which any Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

42.    Upon information and belief, the Class consists of hundreds of retirement plan participants. Accordingly, it would be impracticable to join all Class Members before the Court.

43.     Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual Class Members.  These common questions of law or fact to be shown through common evidence include whether:

1.  Whether and to what extent Matrix owed a fiduciary duty to Plaintiffs and Class Members;

2.  Whether Matrix breached its fiduciary duty to Plaintiffs and Class Members;

3.  Whether Matrix failed to exercise the proper care when managing Plaintiffs' and Class Members' assets;

4.  Whether Matrix knew or should have known that the transfers sent to the Vantage bank account were improper;

5.  Whether and to what extent Plaintiffs and Class Members are entitled to injunctive relief as a result of Matrix's actions; and

6.  Whether and to what extent Plaintiffs and Class Members are entitled to damages as a result of Matrix's actions.

44.     The claims of Plaintiffs are typical of the claims of Class Members, in that they share the above-referenced facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiffs and Defendant's conduct affecting Class Members, and Plaintiffs have no interests adverse to the interests other Class Members.

45.     Plaintiff will fairly and adequately protect the interests of Class Members and has retained counsel experienced and competent in the prosecution of complex class actions.

46.     Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final relief with respect to the Classes as a whole.

47.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, if any.

48.     Defendant's breach of fiduciary duty, breach of common law fiduciary duty, breach of contract, and breach of the duty of good faith and fair dealing will be shown through common evidence.

49.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because (i) there has been no interest shown of members of the class in individually controlling the prosecution of separate actions; (2) Plaintiffs are aware of no other litigation concerning the controversy already commenced on behalf of plan participants by any member of the class; (3) it is desirable to concentrate the litigation in this forum, which is familiar to both Plaintiffs and Defendant; and (4) there are no difficulties likely to be encountered in the management of this class action.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF:
### BREACH OF FIDUCIARY DUTY

50.     Plaintiffs incorporate all preceding paragraphs as if fully set out herein.

51.     At all relevant times, Matrix owed a fiduciary duty to the Plaintiffs and Class Members by virtue of its role as custodian and trustee of Plaintiffs' and Class Members' § 403(b) Plan Assets under C.R.S. §§ 15-1-301 to 15-1-305, and its conduct undertaken pursuant thereto.

52.     Matrix breached its fiduciary duty to Plaintiffs and the Class Members when it executed transfers of Plaintiffs' and Class Members' § 403(b) Plan Assets into the Vantage Account, without authorization of direction from Plaintiffs or the Plans, in violation of the terms of § 403(b) Plans.

53. Under the Colorado Uniform Fiduciary Law, a fiduciary is "governed by the standard for trustees set forth in the 'Colorado Uniform Prudent Investor Act' [C.R.S. §15-1.1-101 et seq.]" when that fiduciary is "investing and managing assets." C.R.S. § 15-1-304.1(1).

54. The Colorado Prudent Investor Act holds that trustees "shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." C.R.S. § 15-1.1-102(A). This standard, however, does not authorize "any departure from or variation of the express terms or limitations set forth in any . . . instrument creating or defining the fiduciary's duties and powers." C.R.S. § 15-1-305.

55. Funds of custodial accounts formed under § 403(b) can only be invested in "regulated investment company stock to be held in that custodial account" or, under certain circumstances, distributed to the accountholder or their heirs. 26 U.S.C. § 403(b)(7).

56. Matrix breached its fiduciary duty to the Plaintiffs and Class Members when it did not exercise "reasonable care, skill, and caution," or invest Plaintiffs' and Class Members' "assets as a prudent investor would," when executing transfers to the Vantage bank account without verifying that the destination was allowed for § 403(b) Plan Assets.

57. At all relevant times, Matrix had possession of Plaintiffs' and Class Members' § 403(b) Plan Assets, and it unilaterally completed each of the fraudulent wire transfers to the Vantage Account without any authorization or direction from the Plaintiffs, the Class Members, or the § 403(b) Plans, but rather at the sole direction of Vantage.

58. Matrix failed to provide trust account statements to Plaintiffs and Class Members and completed the fraudulent transfers on a non-reportable basis without any authority from

Plaintiffs, Class Members, or the § 403(b) Plans, which prevented Plaintiffs and the Class Members from discovering the fraudulent transfers.

59.     Matrix knew or had reason to know that the transfers were invalid and fraudulent transfers to an impermissible business bank account maintained by Vantage at Bank of America.

60.     As a direct and proximate result of Matrix's breach of fiduciary duty the Plaintiffs' and Class Members' sustained damages. Matrix fraudulently transferred at least three million dollars ($3,000,000.00) from Class Member Accounts over an approximately six (6) to twelve (12) month period.  As a result of Matrix's fraudulent transfers, Plaintiffs and Class Members lost both the transferred funds and the interest that would have accrued – and would still be accruing – on those funds, had they been properly managed or invested.

## SECOND CLAIM FOR RELIEF:
### BREACH OF COMMON LAW FIDUCIARY DUTY

61.     Plaintiffs incorporate all preceding paragraphs as if fully set out herein.

62.     At all relevant times, Matrix had a common law fiduciary duty, created by virtue of its acceptance of custody and management of Plaintiffs' and Class Members' § 403(b) Plan Assets, to act primarily for the benefit of Plaintiffs and Class Members in matters connected with that role.

63.     Matrix breached its common law fiduciary duty to the Plaintiffs and the Class Members when it executed transfers of Plaintiffs' and Class Members' § 403(b) Plan Assets into the Vantage Account, per Vantage's instructions and without the authorization of Plaintiffs for the Plan, counter to the interests of the Plaintiffs and Class Members and in violation of the terms of the § 403(b) Plans.

64.     Matrix's breach of common law fiduciary duty was a direct and proximate cause of the Plaintiffs' and Class Members' resultant damages.

## THIRD CLAIM FOR RELIEF:
### BREACH OF CONTRACT

65.     Plaintiffs incorporate all preceding paragraphs as if fully set out herein.

66.     An implied contract existed between Plaintiffs and Class Members, on the one hand and Matrix, on the other.  Plaintiffs and Class Members entrusted their § 403(b) Plan Assets to the custody of Matrix and agreed to pay Matrix a fee for the management of said Assets.  In exchange, Matrix was obligated to prudently manage the § 403(b) Plan Assets in accordance with the rules of the respective § 403(b) Plans.  There was a meeting of the minds on all essential terms of the contract, as evidenced by Matrix's acceptance of the Plaintiffs' and Class Members' offer by taking custody of the § 403(b) Plan Assets, and consideration therefor was exchanged.

67.     Plaintiffs and Class Members performed their duties under the implied contract via the delivery of § 403(b) Plan Assets into Matrix's custody and control, together with the payment of compensation made to Matrix therefor.

68.     Matrix breached the duties it owed to Plaintiffs and Class Members under the contract when it executed fraudulent transfers of their § 403(b) Plan Assets into the Vantage Account pursuant to Vantages directions for same, without any authority therefor from Plaintiffs, Class Members or the Plan, counter to the interests of the Plaintiffs and Class Members, and in violation of the terms of Plaintiffs' and Class Members' § 403(b) Plans.

69.     Matrix's breach of contract was a direct and proximate cause of the Plaintiffs' and Class Members' resultant damages.

## FOURTH CLAIM FOR RELIEF:
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

70.     Plaintiffs incorporate all preceding paragraphs as if fully set out herein.

71.     In addition to its breach of contract, generally, Matrix breached the implied duty of good faith and fair dealing with respect to the illegitimate and fraudulent transfers of the § 403(b) Plan Assets into the Vantage Account without any authority therefor from Plaintiffs, Class Members or the Plan, counter to the interests of the Plaintiffs and Class Members, and in violation of the terms of Plaintiffs' and Class Members' § 403(b) Plans.

72.     Matrix, as custodian of Plaintiffs' and Class Members' § 403(b) Plan Assets, retained the discretion to decline to execute the transfer orders received from Plaintiffs and Class Members or their agents if there was an issue with those orders. This authority to decline to execute transfers extended to and encompassed the directions communicated by Vantage through the TPA Portal for the fraudulent transfers.

73.     Vantage's directions and instructions to transfer the § 403(b) Plan Assets to the Vantage Account were clearly in violation of the terms of the § 403(b) Plans and, therefore, Matrix was not obligated to execute the transfers, and in fact, should have declined to effectuate such transfers.  By failing to exercise its discretion to decline the fraudulent transfer instructions from Vantage, Matrix violated its duty of good faith and fair dealing under its implied contract with the Plaintiffs and Class Members.

74.     Matrix's breach of contract was a direct and proximate cause of the Plaintiffs' and Class Members' resultant damages.

## FIFTH CLAIM FOR RELIEF:
## VIOLATIONS OF THE COLORADO SECURITIES ACT,
## C.R.S. §§ 11-51-501 and 11-51-604(3)

75.     Plaintiffs incorporate all preceding paragraphs as if fully set out herein.

76.     As set forth above, Matrix, in connection with the offer, sale, or purchase of a security employed a device, scheme or artifice to defraud Plaintiffs and Class members, and engaged in acts, practices and a course of business which operated as fraud or deceit upon Plaintiffs and the Class Members. C.R.S. §§ 11-51-501(1)(a) and (c).

77.     As alleged in the preceding paragraphs, Matrix, in association with Vantage, employed a Fraudulent Transfer Scheme which defrauded Plaintiffs and Class Members by acting on the direction of Vantage to effectuate fraudulent transfers of Plaintiffs' and Class Members' § 403(b) Assets, which are considered securities, into the Vantage Account, without the authority of Plaintiffs, Class Members, or the § 403(b) Plan, in violation of the terms of the Plan and of Matrix's fiduciary duties.

78.     Matrix's fraudulent transfers the § 403(b)Plan Assets into the Vantage Account from approximately May to October 2017, in accordance with Vantage's directive and instructions operated as fraud and deceit upon Plaintiffs and Class Members.

79.     Matrix, in connection with the offer, sale, or purchase of a security, also made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. C.R.S. § 11-51-501(a)(2).

80.     As alleged in the preceding paragraphs, at the sole direction of Vantage, Matrix suppressed, on its account administration systems, and withheld the § 403(b) Plans' trust statements from the Plaintiffs, Class Members, and § 403(b) Plans, even though it had no authority

from the Plaintiffs to follow such an instruction from Vantage. Without receiving the trust statements showing the actual and depleted balances of the § 403(b) Plans' accounts held at Matrix, Plaintiffs did not and could not have discovered the Fraudulent Transfer Scheme until after the disbursement of a substantial amount of their § 403(b) Assets.

81.     Matrix's suppression of the § 403(b) Plans' trust statements allowed Matrix and Vantage to continue engaging in the Fraudulent Transfer Scheme from approximately May through October 2017, defrauding Plaintiffs and Class Members. Had Matrix truthfully and accurately disclosed the trust statements as was required under the Plans, Plaintiffs and Class Members would have learned of the Fraudulent Transfer Scheme earlier than they did, and the ultimate damages Plaintiffs and Class Members sustained would have been minimized or reduced.

82.     Matrix's omissions, as alleged herein above were materially false and misleading because Defendant: (a) knew or should have known through access to the materially adverse non-public information about the accounts Vantage instructed the transfers be directed into, the specific regulations governing transfers of § 403(b) Plan Assets, and the like, none of which were disclosed; (b) effectuated the transfers and subsequently suppressed and withheld the trust statements from the  Plaintiffs, Class Members and the § 403(b) Plans, that would have revealed the Fraudulent Transfer Scheme; and (c) had an obligation to inform the Plaintiffs, Class Members and the § 403(b) Plans of the transfers of Plan Assets, and to provide trust statements reflecting same to the § 403(b) Accountholders.

83.     The aforementioned material misstatements and omissions by Matrix, had the direct effect of concealing from Plaintiffs, Class Members and the § 403(b) Plans the fraudulent transfers of Plan Assets to the Vantage Account at the direction of Vantage and effectuated by Matrix. As such, Plaintiffs and Class Members could not have known that the untrue statements

of material fact made by Matrix were untrue or that Matrix had omitted to state material facts, and, in the exercise of reasonable care could have known the untruth or omission.

84.     The acts, actions, practices and omissions of Matrix (including the concealment and suppression of trust statements) were substantial factors in determining the course of conduct that resulted in Plaintiffs' and Class Members' losses and damages.

85.     As a direct and proximate result of Matrix's acts and omissions, Plaintiffs and Class Members sustained significant damages.

## <u>SIXTH CLAIM FOR RELIEF</u>:
## AIDING AND ABETTING VIOLATIONS OF THE COLORADO
## ORGANIZED CRIME CONTROL ACT ("COCCA") C.R.S. § 18-17-101 *et seq.*

86.     Plaintiffs incorporate all preceding paragraphs as if fully set out herein.

87.     At all relevant times herein, Matrix and Vantage were considered a "persons" within the meaning of The Colorado Organized Crime Control Act ("COCCA"), C.R.S. §§ 18-17-103(4).

88.     At all relevant times herein, Plaintiffs and Class Members were considered "persons" aggrieved or injured within the meaning of COCCA, C.R.S. §§ 18-17-106(6) and (7).

89.     At all relevant times herein, Matrix and Vantage formed an association-in-fact for the purpose of defrauding Plaintiffs' and Class Members and diverting funds from their §403(b) Plans (the "Fraudulent Transfer Scheme"). This association-in-fact was an "enterprise" within the meaning of COCCA, C.R.S. § 18-17-103(2).

90.     Matrix and Vantage conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of COCCA, C.R.S. § 18-17-103(3), in violation of COCCA, C.R.S. § 18-17-104(3) to further its

Fraudulent Transfer Scheme and plans related thereto, and where all such schemes, devices, and actions were related to the conduct and in furtherance of their enterprise.

91.     Specifically, at all relevant times herein, Vantage and Matrix, through aiding and abetting, engaged in racketeering within the meaning of C.R.S. § 18-17-103(5), when they conspired to commit and did commit violations of the Colorado Securities Act, under C.R.S. §§ 11-21-501(1) and 11-51-604; wire fraud, under 18 U.S.C. § 1343; state computer crimes, under C.R.S. § 18-5.5-102; and unauthorized use of a financial transaction device, under C.R.S. § 18-5-702.

92.     Vantage directly participated in directing the affairs of the enterprise and committed a pattern of racketeering in the following non-exclusive respects:

a.    Vantage violated the Colorado Securities Act when from approximately May through October 2017, in connection with the offer, sale or purchase of any security, including the § 403(b) Plans, it employed a device, scheme, or artifice to defraud Plaintiffs and Class Members. As set forth herein above, Vantage directed Matrix to fraudulently transfer § 403(b) Plan Assets to its Bank of America business account. Additionally, Vantage directed Matrix to structure and label the fraudulent distributions as non-reportable for federal and state tax purposes, thereby resulting in omissions by both Vantage and Matrix as to material facts of the utmost importance to Plaintiffs and Class Members in connection with the management of their § 403(b) Plans. The scheme at issue involved the investment of money in a common enterprise with profits that were wrongfully derived solely from the efforts of others, namely the Plaintiffs and Class Members.  C.R.S. §§ 11-21-501(1) and 11-51-604.

b.  As set forth herein above, Vantage committed wire fraud, under 18 U.S.C. § 1343 and thus, engaged in racketeering activity when it, from Texas, transmitted or sent electronic messages to Matrix in Colorado, through the Matrix's online TPA Portal intended for customers, and not Vantage, over the course of months between approximately May through October 2017, providing specific detailed instructions to Matrix for the fraudulent transfer of Plaintiffs' and Class Members' § 403(b) Plan Assets  into a business bank account maintained by Vantage or its agents at Bank of America, without the authorization of Plaintiffs or Class Members and in violation of the terms of the § 403(b) Plan.  Vantage utilized the TPA Portal to execute the Fraudulent Transfer Scheme. As a result of these directions and instructions by Vantage, Matrix effectuated millions of dollars-worth of fraudulent transfers of Plaintiffs' and Class Members' § 403(b) Plan Assets into the Vantage Account thereby resulting in substantial losses to the Plans.

c.  As set forth herein above, Vantage committed computer crimes under C.R.S. § 15-5.5-102 and engaged in racketeering activity when it accessed and used a computer, computer network, or computer system – namely, the TPA Portal meant for Matrix customers – without authorization or in excess of any possible authorized access in sending messages to Matrix through the Portal directing it to make fraudulent transfers of Plaintiffs' and Class Members' § 403(b) Assets to its own bank account. Vantage also unauthorizedly accessed the TPA Portal for the purpose of devising or executing the Fraudulent Transfer Scheme or artifice to defraud or commit theft of Plaintiffs and Class Members' § 403(b) Plan Assets.

d.  Vantage committed unauthorized use of a financial transaction device under C.R.S. § 18-5-702, and thus, engaged in racketeering when it directed Matrix to fraudulently transfer the Plaintiffs' and Class Members' § 403(b) Assets from their respective Plan accounts for the purpose of obtaining funds or making a financial payment, with the intent to defraud Plaintiffs and Class Members, with knowledge that the transaction was unauthorized Plaintiffs, Class Members or the § 403(b) Plan – the accountholders.

93.    The aforementioned acts of racketeering, which have occurred within ten years of one another constitute a pattern of racketeering activity within the meaning of C.R.S. § 18-17-103(3).

94.    The aforementioned acts of racketeering constitute a "pattern of racketeering activity" within the meaning of COCCA, C.R.S. § 18-17-103(3). The above acts committed as part of the Fraudulent Transfer Scheme were related to each other by virtue of common participants, a common class of victims (*i.e.*, Plaintiffs and Class Members – § 403(b) Plan Accountholders), a common method of commission (a series of unauthorized transfers made by Matrix at the direction of Vantage, as instructed via electronic message through the TPA portal, into the Vantage Account), and the common purpose and common result was to defraud Plaintiffs and the 403(b) Class Members of their Plan Assets, to the benefit of Vantage.

95.    It is unlawful for any person employed by or associated with an enterprise to conduct the affairs of an enterprise through a pattern of racketeering, or for any person to conspire or endeavor to commit a violation of COCCA, C.R.S. §§ 18-17-104(3) and (4).

96.     In violation of C.R.S. § 18-17-104(3), Matrix conspired with and endeavored to violate the provisions of COCCA, C.R.S. § 18-17-104(3), by aiding and abetting Vantage, in the following non-exclusive respects:

a.   Matrix aided and abetted Vantage's violation of the Colorado Securities Act, and conspired with Vantage to commit securities violations when it knowingly agreed to effectuate the transfers and actually did complete the fraudulent transfers from Plaintiffs and Class Members' § 403(b) Plans from approximately May through October 2017, per Vantage's direction, into the Vantage Account despite the many "red flags" demonstrating the illicit and unauthorized nature of the transfers, all in furtherance of the Fraudulent Transfer Scheme.

b.   Matrix aided and abetted Vantage's commission of wire fraud under 18 U.S.C. § 1343 in receiving the messages sent by Vantage, from Texas, through the TPA Portal and subsequently effectuating the fraudulent wire transfers of Plaintiffs' and Class Members' § 403(b) Plan Assets into the Vantage Account pursuant to the directives and instructions provided by Vantage. Although Matrix had the authority and power to decline to effectuate such transfers, it did not. Rather, between approximately May and October 2017, Matrix acted pursuant to the instructions sent by Vantage through the online TPA Portal. By agreeing to effectuate the fraudulent transfers, and in furtherance of the enterprise's Fraudulent Transfer Scheme Plaintiffs' and Class Members' § 403(b) Plans suffered substantial losses and resultant damages.

c.   Matrix aided and abetted Vantage's violations of computer crimes under C.R.S. § 15-5.5-102, and thus racketeering activity, by carrying out the Fraudulent Transfer

Scheme as Vantage directed it to do in the TPA Portal messages from approximately May through October 2017.

d.  Matrix aided and abetted Vantage's unauthorized use of a financial transaction device under C.R.S. § 18-5-702, and thus racketeering activity, when it acted on Vantage's instructions to fraudulently wire the § 403(b) Plan Assets, using the § 403(b) Plans' account numbers, into the Vantage Account. Matrix knew or should have known these transfers were unauthorized by Plaintiffs, Class Members and the § 403(b) Plans, and that the account that Vantage instructed Matrix to make the transfers were impermissible § 403(b) plan disbursements.

97.     As set forth herein above, Matrix and Vantage conspired with the common purpose of fraudulently, illegally, and unauthorizedly misappropriating Plaintiffs' and the 403(b) Class Members' 403(b) Plan Assets through a series of fraudulent wire transfers of the § 403(b) Plan Assets into the Vantage Account.

98.     In carrying out Fraudulent Transfer Scheme, Matrix has injured Plaintiffs and the § 403(b) Class Members.

99.     As a direct and proximate result of Matrix's aiding and abetting, participating in, and conspiring with Vantage to violate COCCA, C.R.S. § 18-17-104(3), Plaintiffs and the Class Members have been damaged and are, therefore, entitled to treble damages, costs, and reasonable attorney's fees pursuant to C.R.S. § 18-17-106(7).

## DEMAND FOR JURY TRIAL

100.    Plaintiffs demand trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the §403(b) Plan Class Members request the following relief
and that the Court:

    a.  Grant certification of this case as a class action;

    b.  Appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

    c.  Award compensatory damages to Plaintiffs and the proposed Class Members, or,
alternatively, require Defendants to disgorge or pay restitution of its ill-gotten gains;

    d.  Award treble damages pursuant to COCCA, C.R.S. § 18-17-106(7);

    e.  Award pre- and post-judgment interest;

    f.  Award reasonable and necessary attorneys' fees and costs; and

    g.  For all such other and further relief as may be just and proper.

DATED: This 27th day of June 2018.

Respectfully submitted,

**ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.**

*/s/ Patrick D. Vellone*
Patrick D. Vellone (CO Reg. No 15284)
Rachel A. Sternlieb (CO Reg. No. 51404)
1600 Stout Street, Suite 1100
Denver, CO 80202
P: 303-534-4499
F: 303-893-8332
E-mail: pvellone@allen-vellone.com
E-mail: rsternlieb@allen-vellone.com

-AND-

**STECKLER GRESHAM COCHRAN PLLC**

*/s/ Bruce Steckler*
Bruce Steckler (TX Bar No. 00785039)
Katherine R. Grosskopf (TX Bar No. 24106668)
12720 Hillcrest Rd. Suite 1045
Dallas, Texas 75230
P: 972-387-4040
F: 972-387-4041
E-mail: bruce@stecklerlaw.com
E-mail: katie@stecklerlaw.com

-AND-

**PALTER STOKLEY SIMS, PLLC**

*/s/ John T. Palter*
John T. Palter (TX Bar No. 15441500)
Preston Commons East
8115 Preston Road, Suite 600
Dallas, Texas 75225
P: 214-888-3111
F: 214-888-3109 Fax
E-mail: jpalter@palterlaw.com

**ATTORNEYS FOR DAVE YOUNGBLOOD, DON STEINBACH AND THE PUTATIVE CLASS**